IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

HUBERT W. SAWYER,

    Plaintiff,
  vs.            **Case No. 10-2464-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
    Defendant.

### MEMORANDUM AND ORDER

  This case is before the court for review of defendant's decision to deny plaintiff's application for supplemental security income (SSI) benefits.  Defendant denied plaintiff's application for SSI benefits on the basis of an Administrative Law Judge (ALJ) decision which was filed on April 19, 2010.  This decision also denied plaintiff's application for child insurance benefits.  That portion of the decision is not challenged by plaintiff in this case.

  The decision under review was made following a court-ordered remand of a prior decision to deny plaintiff's applications for benefits.  It appears undisputed that the relevant time period in this matter commences on July 30, 2003.

  To qualify for SSI benefits, plaintiff must establish that he was "disabled" at a time when he has had an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.  To be "disabled" means that plaintiff is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

I.  STANDARD OF REVIEW

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004).  "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 420-445)

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 421-23). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ concluded that plaintiff was not "disabled" so as to qualify for SSI benefits because "[a]bsent limitations and restrictions imposed by his longstanding and ongoing alcohol dependence disorder, considering [plaintiff's] age, education, absence of past relevant work, experience, and residual functional capacity . . . there are a significant number of jobs in the regional and national economies that he can perform on a regular and continuing basis." (Tr. 444).

The ALJ made the following specific findings in support of his decision.  First, plaintiff has never engaged in substantial gainful activity and has no relevant work experience.  Second, plaintiff has a longstanding and ongoing alcohol dependence disorder, an affective disorder, a personality disorder, an anxiety-related disorder, borderline to low average intellectual functioning, "minimal" degenerative disc disease of the thoracic and lumbar spines, "minimal" coronary artery disease with overall good cardiovascular functioning, and hypertension well-controlled with prescribed medication.  Third, this combination of impairments imposes more than slight or minimal limitations upon his ability to perform basic work-related activities and is therefore "severe" within the meaning of the social security regulations.  Fourth, plaintiff's "longstanding and ongoing alcohol dependence disorder meets the requirements of Section 12.09 of the Listing of Impairments, as his recurrent episodes of intoxication and detoxification result in the following functional limitations as evaluated under Sections 12.02B, 12.04B, 12.06B, and 12.08B and utilizing the psychiatric review technique:  mild to moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation due to intoxication and detoxification, but each not of extended duration as defined in Section 12.00C4."  (Tr. 427).

Fifth, noting that social security regulations require that a claimant's inability to work be assessed independently from the limitations and restrictions of an alcohol dependence disorder, the ALJ decided that the remainder of plaintiff's mental and physical limitations in combination qualified as "severe" within the <u>de minimus</u> requirements of the regulations. (Tr. 428). However, the ALJ concluded that these limitations and restrictions do not meet the severity requirements or meet or medically equal the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 433).

Sixth, the ALJ found that, absent the limitations and restrictions of his longstanding alcohol dependence disorder, plaintiff retains the residual functional capacity to perform medium work with the following conditions. Plaintiff is precluded from jobs requiring exposure to extreme heat or cold. (Tr. 434). "He is limited to simple, repetitive, unskilled work that involves no complex or intermediate instructions or tasks, and involves learning by demonstration only and no changes in the workplace." <u>Id</u>. In addition, he is "precluded from jobs requiring contact with the general public during the performance of job duties and is restricted to jobs requiring only minimal interactions with coworkers and supervisors." <u>Id</u>. Nevertheless, with support from the testimony of a vocational expert, the ALJ concluded that (ignoring the limitations imposed by plaintiff's alcoholism)

plaintiff could perform such unskilled work as is done by a janitor, an order filler, and a twisting machine operator.  (Tr. 444-45).

Seventh, the ALJ found that plaintiff's "allegations regarding the overall severity of his symptoms and limitations retain only 'slight credibility,' which the [ALJ found] to be consistent with the many extreme and unsupported exaggerations reflected in testimony or to physicians in the medical evidence of record." (Tr. 435).

III.  REVIEW AND ANALYSIS

As the court reads plaintiff's brief, plaintiff is making two main arguments:  first, that the ALJ erred when he found that plaintiff's alcohol dependence was a contributing factor to plaintiff's disability; and second, that the ALJ erred when he found that plaintiff could maintain substantial gainful employment.[1]

A.  <u>Alcohol as a contributing factor to plaintiff's disability</u>

The Social Security Act provides that "[a]n individual shall

---

[1] Plaintiff also asserts that the ALJ did not include all of plaintiff's exertional and non-exertional impairments in his RFC finding.  Doc. No. 15 at p. 20.  However, plaintiff does not specify in argument or evidence which impairments were mistakenly left out of the ALJ's RFC finding.  The court agrees with defendant that plaintiff has failed to meet his obligation to identify the specific restrictions or limitations which the ALJ should have included in his RFC finding.  See <u>Threet v. Barnhart</u>, 353 F.3d 1185, 1190 (10th Cir. 2003) (court will not speculate on a party's behalf if that party fails to specify which opinion of which treating physician an ALJ allegedly ignored).

not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Under regulations promulgated pursuant to this statute, the Commissioner must examine whether plaintiff would be disabled under the statute if he or she stopped using drugs or alcohol. Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001). "[T]he ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether any or all of plaintiff's remaining limitations would be disabling." Id. If the ALJ finds that plaintiff would still be found disabled if he stopped abusing alcohol, "then the alcohol abuse is not a contributing factor material to the finding of disability." Id. at 1214-15. "If, however, [plaintiff's] remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability." Id. at 1215.

As noted, plaintiff's first argument for reversal is that substantial evidence does not support the ALJ's conclusion that alcoholism is a material factor in plaintiff's disability. Doc. No. 15 at pp. 24-25. Plaintiff argues that the ALJ relies upon the testimony of Dr. Nancy Winfrey for this conclusion, but that Dr. Winfrey's opinion is not well-supported in the record.

Dr. Winfrey reviewed plaintiff's records, but did not examine plaintiff. Dr. Winfrey testified that plaintiff's mental health issues were "certainly exacerbated and in some cases maybe originate from[] problems that he has with alcohol." (Tr. 1022). She admitted that it was difficult to determine what plaintiff's condition would be in times of sobriety and she also stated that "there's a lot of overlap between his alcohol dependence issues and his other[] issues." (Tr. 1030-31). Still, she testified that plaintiff's depression improved at least in the short term with less alcohol. (Tr. 1030). She further commented that if plaintiff was sober "he could function, I think he could work, and a lot of the mental health issues would diminish or be better." (Tr. 1031).

She stated that she agreed with the evaluations of Dr. Stanley Mintz. Dr. Mintz performed three evaluations of plaintiff. In his third evaluation completed on October 2, 2009, he concluded that plaintiff had a "fair" ability to: follow work rules; relate to co-workers; deal with the public; interact with supervisors; and maintain attention and concentration. (Tr. 1008). He assessed that plaintiff had a "poor" ability: to use judgment; deal with work stresses; and function independently. Id. Dr. Mintz remarked that plaintiff had a "good" ability to understand, remember and carry out simple job instructions; a "fair" ability to understand, remember and carry out detailed, but not complex, job instructions; and a "poor" ability to remember and carry out complex job

8

instructions. (Tr. 1009). Dr. Mintz further concluded that plaintiff had a "fair" ability to maintain his personal appearance and a "poor" ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Id. He found that alcohol contributed significantly to plaintiff's problems, such as plaintiff's lowered social skills, depression, and difficulties in activities of daily living. (Tr. 1009-10).

Dr. Winfrey was asked to assess plaintiff's functional capacity when plaintiff was not abusing drugs or alcohol. She stated that plaintiff was not significantly limited in the following areas: the ability to understand short, simple instructions; the ability to ask simple questions or request assistance; the ability to make simple work decisions; the ability to maintain socially appropriate behavior; the ability to maintain standards of neatness and cleanliness; the ability to respond to changes in a work setting; the ability to be aware of normal hazards; and the ability to travel in unfamiliar places. She concluded that plaintiff had "moderate" limitations in these functions: remembering locations and work procedures; understanding detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; sustaining ordinary routines without special supervision; working in coordination with

or in proximity of others; interacting appropriately with the public; accepting instructions and responding to criticism; getting along with co-workers; and setting realistic goals and planning independently.[2]  (Tr. 1028-29).

The ALJ's decision makes reference to Dr. Winfrey's opinion as follows:

> Dr. Winfrey testified as an impartial medical expert based upon her review of the entirety of the medical evidence of record and she opined claimant's alcohol dependence disorder greatly contributes to his mental symptoms and greatly impedes his ability to work.  This assessment is widely consistent with substance abuse counseling and mental healthcare treatment records from Southern Kansas Mental Health Center that reflect heavy emphasis upon abstinence from alcoholism and sustained sobriety as a primary treatment goal and notations that claimant has a good prognosis for his other mental impairments if he were to maintain sobriety.  The Administrative Law Judge accords significant weight to Dr. Winfrey's assessment in this regard as she is not only a licensed clinical psychologist, a well-qualified mental healthcare specialist, and an "acceptable medical source" as defined in 20 CFR 416.913 and SSR 06-3p, but also she retains considerable expertise with regard to evaluating mental impairments under the severity requirements set forth under Section 12.00 of the Listing of Impairments and the disability programs administered by the Social Security Administration.  Her opinion in this regard is consistent with and supported by diagnostic assessments reflected in contemporaneous treatment notes and reports provided by consultative medical and psychological examiners, as well as claimant's own admission at the December 2009 hearing that he continues to drink alcohol to intoxication, 6-8 beers at a time several times a month.

---

[2] These limitations were much more extensive than those determined by Dr. Robert Blum, a state agency psychological consultant in August 2007. (Tr. 754-56). He concluded <u>inter alia</u> that other than not likely doing well with the public, plaintiff was capable of competitive level work. (Tr. 756).

(Tr. 427).

The ALJ further supported his and Dr. Winfrey's conclusions regarding the materiality of plaintiff's alcohol dependence with a number of other points including the following. First, in the last 30 years plaintiff seldom if ever reported psychotic symptoms. (Tr. 428). Second, at numerous mental health checkups, plaintiff's mood and mental functioning were often noted as "good" or "normal" or "euthymic" or "friendly" or "cooperative," even when he was not taking medication. (Tr. 441). Third, when plaintiff was in prison, and therefore not using alcohol, his mental functioning was adequate although he preferred being in segregation. (Tr. 429). This level of functioning continued for a few months after he was released from prison. (Tr. 272). Fourth, plaintiff was able to work for approximately four months in 2000 during a period of decreased alcohol dependence, when he was ordered by a court to do so. (Tr. 426). The court has examined the record and believes that it substantiates each of these points. In sum, after careful consideration, the court believes substantial evidence, including the opinion of Dr. Winfrey, supports the ALJ's conclusion that plaintiff's alcohol dependence is a material factor contributing to plaintiff's disability.

B. <u>Plaintiff's ability to perform substantial gainful employment</u>

Plaintiff's final argument to reverse defendant's decision to

deny benefits is that Dr. Winfrey's testimony as interpreted together with the vocational expert's testimony, contradicts the ALJ's finding that plaintiff is capable of substantial gainful employment. Doc. No. 15 at p. 26.

As noted earlier in the opinion, Dr. Winfrey concluded that plaintiff was "moderately" limited in several areas of functioning. The vocational expert was asked what her assessment would be if plaintiff had "moderate" limitations in so many functions. She replied:

> I wish we could've had the wor[d] moderate defined . . . so we'd actually know what she was talking about with moderate, because I've had too many different definitions. There were 12 out of the 20 areas that she indicated . . . were moderately restricted. Typically, once you get that many moderates together . . . they piggyback on top of each other and it makes it difficult for them to maintain any job. They can do for a short period of time, but they cannot maintain it.

(Tr. 1048). This answer may be contrasted with the vocational expert's response to the ALJ's hypothetical question. That hypothetical asked the expert to assume that plaintiff is capable of medium work with no exposure to extremes of heat or cold and that he is limited to simple repetitive unskilled work that involves no complex or intermittent instructions or tasks, and involves learning by demonstration only, and that plaintiff would only have minimal interaction with coworkers and minimal supervision. The vocational expert listed at least three occupations which could be performed by plaintiff under these

limitations.

Although the ALJ gave significant weight to Dr. Winfrey's testimony, he was not bound to accept it completely. He also gave significant credit to other assessments of plaintiff's limitations which were not as restrictive as Dr. Winfrey's; for instance, the assessments of Dr. Mintz and Dr. Blum. The ALJ, not Dr. Winfrey, had the role of determining plaintiff's RFC. See Rutledge v. Apfel, 230 F.3d 1172, 1175 (10th Cir. 2000); 20 C.F.R. § 416.946. The court finds that the ALJ's hypothetical to the vocational expert is supported by substantial evidence. Therefore, under the rules of review governing plaintiff's case, the court finds no error in the ALJ's conclusion that plaintiff could perform and maintain substantial gainful employment.

In reaching this conclusion, the court has considered the testimony of Kym Hargrove. (Tr. 1038-1042). At the time of her testimony, Ms. Hargrove was a caseworker for the Southeast Kansas Mental Health Center and had worked with plaintiff for six months. She testified that she worked with plaintiff on his anger and anxieties. She remarked that plaintiff had a bad temper with some staff at the mental health center and at times would scream and yell at people. Ms. Hargrove noted that plaintiff was asked to attend a class, but he was disruptive and did not fit in well on the only occasion he attended. She further observed that defendant wanted everything his way and did not socialize well. She felt

that plaintiff would not accept any criticism from supervisors or coworkers.

The ALJ discussed Ms. Hargrove's testimony in his decision. (Tr. 443). He noted that her academic background did not accord her "significant expertise with regard to assessing mental impairments." Id. Nevertheless, he gave "some very limited weight" to her testimony. Id. The ALJ believed that plaintiff's behavior as described by Hargrove was connected to his alcoholism. The ALJ further noted that Hargrove did not attempt to describe how plaintiff might function without being dependent upon alcohol. Id.

The court believes that the ALJ has given good grounds for limiting the weight of Ms. Hargrove's testimony. Therefore, the court continues to find that substantial evidence supports the ALJ's determination of plaintiff's RFC and plaintiff's ability to perform substantial gainful employment absent the influence of plaintiff's alcohol dependence.

IV. CONCLUSION

For the above-stated reasons, defendant's decision to deny plaintiff's applications under the Social Security Act shall be affirmed.

**IT IS SO ORDERED.**

Dated this 29th day of July, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge